United States District Court
for the
Southern District of Florida

| Charlevoix Equity Partners Intl., | ) | |
|---|---|---|
| Inc., Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-24764-Civ-Scola |
| | ) | |
| AIG Property Casualty Company, | ) | |
| Defendant. | ) | |

### Order Granting Motion to Compel Appraisal and Stay Case

In this case Plaintiff Charlevoix Equity Partners Intl., Inc. seeks compensation for losses it incurred when its insured ninety-seven foot yacht and the yacht's thirty-seven foot tender ran aground, against rocks, in the Bahamas. (Def.'s Mot. to Compel Appraisal and Mot. to Stay, ECF No. 10, 2–3.) Defendant AIG Property Casualty Company, the insurer, specifically does not deny coverage for the damages to the vessel, but quarrels only as to the amount of the loss sustained. (Def.'s Mot. at 7; Def.'s Reply, ECF No. 21, 2.) Based on an appraisal clause within the parties' insurance policy, AIG asks the Court to compel an appraisal and stay this case. (*Id.*) Charlevoix has not persuaded the Court, in its response (ECF No. 20), that the appraisal process should not move forward. The Court therefore **grants** AIG's motion (**ECF No. 10**), thus compelling the appraisal and staying this case.

1. **Background**

Under the parties' policy, where partial damage to the insured's vessels results from a covered loss, AIG agrees to "pay the reasonable costs of repair, with materials of like kind and quality." (Def.'s Mot. at 2.) In accordance with the "General Conditions" section of the policy, the insured is required to comply with a number of requirements under certain conditions. (Def.'s Mot., Ex. 1, ECF No. 10-1, 24.) One of those General Conditions provisions sets forth an appraisal procedure, which is triggered when the parties "fail to agree on the amount of physical loss or damage." (*Id.* at 25.) According to that provision, upon such a disagreement, "either party may make a written demand that each selects an independent appraiser." (*Id.*) Once such a demand is made, "the parties must notify each other of their selection within twenty [] days." (*Id.*) Thereafter, the independent appraisers must select an arbitrator within fifteen days. (*Id.*) Assuming the parties are able to agree on

an arbitrator, the appraisers are to submit any differences in their appraisals for arbitration. (*Id.*)

In a September 12, 2016 letter, AIG notified Charlevoix that if it did not accept AIG's payment as a full settlement of Charlevoix's claim and instead contested the insurer's damage calculations, then AIG "demand[ed] an appraisal." (Pl.'s Reply, Ex. A., ECF No. 20-1, 1.) In the same paragraph, AIG announced the appointment its own appraiser and requested that Charlevoix do the same. (*Id.*) Charlevoix, in response, refused to appoint an appraiser, or otherwise participate in the appraisal process, and instead filed suit against AIG in state court. AIG thereafter removed the case to this Court. (Not. of Removal, ECF No. 1.)

Charlevoix's complaint lodges two counts against AIG. First, Charlevoix complains that AIG has breached the terms of the policy insuring the vessels by failing to pay the full amount of the damages caused by the grounding. Second, Charlevoix seeks a declaratory judgment, claiming AIG has essentially denied coverage based on its construction of certain terms in the policy.[1]

## 2. Discussion

AIG submits that it properly triggered the appraisal process and that Charlevoix has failed to comply with its corresponding duties and obligations related to that process. According to AIG, complying with the appraisal provision is a condition precedent to Charlevoix's right to maintain an action on the policy. Charlevoix counters that the appraisal provision is not applicable for a number of reasons. First, Charlevoix argues that AIG's failure to comply with Florida Statutes section 627.7015 renders the appraisal provision unenforceable. Second, Charlevoix says that its suit is really a dispute over coverage, and not the amount of the loss, and therefore an appraisal would be premature. And third, Charlevoix complains that AIG did not properly demand an appraisal and thus has not actually triggered the appraisal process. The Court finds Charlevoix's arguments unavailing.

---

[1] Charlevoix sought leave to amend its complaint which the Court granted in part and denied in part. (Order, ECF No. 29.) Unhappy with the result, Charlevoix filed a motion for reconsideration of that part of the Court's order denying its motion to amend. That motion is denied as moot as a result of the relief granted in this order. The Court notes, however, that whether the Court allowed the amendment or not would not have affected its decision in this matter.

### A. Florida Statutes section 627.7015 does not apply to this case.

Charlevoix contends that AIG may not invoke the policy's appraisal process because it failed to comply with certain notice requirements set forth in Florida Statutes section 627.7015. This statute section establishes a mediation alternative for the handling of certain property insurance claims. Charlevoix has not presented any support for its impression that this section applies to this case. In assessing the plain terms of the statute, Florida case law, and the Florida rules implementing the statute section, the Court finds that this section appears to apply only to policies covering residential properties. Therefore, this statute section would have no bearing on the policy in this yacht-insurance case. Fla. Stat. § 627.7015(1) ("This section is available with respect to claims under personal lines and commercial residential policies . . . ."); *see also Florida Ins. Guar. Ass'n, Inc. v. Devon Neighborhood Ass'n, Inc.*, 67 So. 3d 187, 191 (Fla. 2011) (noting that when section 627.7015 was first enacted it applied *only* to homeowner residential insurance policies and was later expanded to include commercial residential insurance policies as well); Fla. Admin. Code Ann. r. 69J-166.002, .031 (in implementing section 627.7015 noting that "the program established under this rule is prompted by the critical need for effective, fair, and timely handling of commercial residential [and residential] property claims"). Charlevoix has failed to provide any support for his contention that this statute section should apply to this case.

### B. The controversy in this case involves an amount-of-loss dispute and not a coverage dispute.

Charlevoix also argues that this case involves a coverage dispute rather than an amount-of-loss dispute. In support, Charlevoix points to two parts of the policy: the provision that provides that AIG will cover "the reasonable costs of repair, with materials of like kind and quality"; and the definition supplied for reasonable costs which the policy defines as "the amount of money, which would be paid by a prudent purchaser." (Pl.'s Resp. at 4.) Charlevoix complains that because the terms "reasonable costs," "prudent purchaser," and "materials of like kind and quality" are "vague and ambiguous," an "appraisal panel cannot possibly reach a valid decision" regarding the loss amount. (*Id.* at 3–4.)

Charlevoix's argument fails to persuade. To begin with, Charlevoix does not provide any context or support for its summary conclusion that the listed terms are vague and ambiguous. It also fails to establish how such terms might prevent an appraiser from forming an opinion regarding a loss amount.

Conversely, AIG explains that it has never denied coverage and instead disputes only the amount of the loss. (Def.'s Reply at 3–4.) As such, it appears to the Court that a marine appraiser would be particularly, if not uniquely, well suited to resolving the amount of "the reasonable costs of repair, with materials of like kind and quality" based "the amount of money, which would be paid by a prudent purchaser." *See Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1025 (Fla. 2002) ("[W]hen the insurer admits that there *is* a covered loss, but there is a disagreement on the *amount* of loss, it is for the appraisers to arrive at the amount to be paid.") (emphasis in original) (quoting and adopting the lower appellate court's analysis in *Gonzalez v. State Farm Fire & Cas. Co.*, 805 So. 2d 814, 816 (Fla. 3d DCA 2000). The Court finds Charlevoix's attempt to recharacterize the dispute as pertaining to coverage rather than amount unconvincing.

### C. AIG's letter was sufficient to trigger the appraisal process.

Lastly, Charlevoix complains that AIG neglected to properly invoke the appraisal provision in its September 12, 2016 letter to Charlevoix. (Pl.'s Resp. at 6.) The Court disagrees. In its September 12th letter, AIG stated that if its check was not accepted by Charlevoix as settlement of its claim and Charlevoix contested AIG's damages calculation, then AIG "demands an appraisal pursuant to the terms and conditions of the policy" and "request[s] that [Charlevoix] advise . . . who [it] will appoint as [its] appraiser." (Pl.'s Resp., Ex. 1 at 1–2.) Under the appraisal provision of the policy, if the parties "fail to agree on the amount of physical loss or damage," then "either party may make a written demand that each selects an independent appraiser." (Def.'s Mot., Ex. 1 at 25.) Once a demand has been made, the parties are required to "notify each other of their selection within twenty [] days." (*Id.*) There does not appear to be any real dispute that as of September 12, 2016 the parties had failed to agree on a loss amount. Further, the Court finds that AIG's "request" that Charlevoix "advise" who it will appoint as its appraiser qualifies as "a written demand" that Charlevoix "select[] an independent appraiser."

### 3. Conclusion

For the foregoing reasons, AIG's motion to compel arbitration and stay this case (**ECF No. 10**) is **granted**. Charlevoix must notify AIG of its appointment of an independent appraiser on or before **June 7, 2017**. Once Charlevoix has made its appointment, the parties are directed to comply with the procedures set forth in the appraisal provision of the policy. In the

meantime, while the parties proceed with the appraisal process, the **Clerk** is directed to administratively **close this case**. Any pending motions, including Charlevoix's motions for reconsideration (**ECF No. 31**) and for oral argument (**ECF No. 42**) are **denied as moot**. The parties shall notify this Court on or before **September 18, 2017** of the status of the appraisal and whether this case is ready to resume, if appropriate. Once the case is reopened, Charlevoix may refile, if necessary, its motion to reconsider the Court's order denying in part Charlevoix's motion to amend.

**Done and ordered**, at Miami, Florida, on May 18, 2017.

Robert N. Scola, Jr.
United States District Judge