United States District Court
for the
Southern District of Florida

| Charlevoix Equity Partners Intl., Inc., Plaintiff, | ) ) ) | |
|---|---|---|
| v. | ) ) ) | Civil Action No. 16-24764-Civ-Scola |
| AIG Property Casualty Company, Defendant. | ) ) ) | |

## **Order Regarding Appraisal Results and Reopening Case**

In this case Plaintiff Charlevoix Equity Partners International, Inc. seeks redress from Defendant insurer AIG Property Casualty Company for losses Charlevoix sustained as a result of the grounding of its insured yacht and the yacht's associated tender. Previously, before permitting the case to proceed further, the Court stayed the proceedings and ordered the parties to submit to the appraisal process they agreed upon within the insurance policy at issue. Since the conclusion of that appraisal process, Charlevoix has filed a motion to reopen this case or, alternatively to vacate the arbitration award (Pl.'s Mot. to Reopen or Vacate, ECF. No. 63), and AIG has filed a motion to confirm the award (Def.'s Mot. to Confirm, ECF No. 65). For the reasons that follow, the Court **grants in part and denies in part** Charlevoix's motion (**ECF No. 63**) and **grants** AIG's motion (**ECF No. 65**). The Court **reopens** this case and will enter an amended scheduling order, immediately following the entry of the instant order.

1. **Background**

Charlevoix, in its complaint, alleges AIG, while acknowledging a covered loss to Charlevoix's yacht and tender, failed to cover the entirety of Charlevoix's claimed damages. As AIG maintains, it disputes "only the amount of [Charlevoix's] loss," and "admits that the property damage caused by the grounding is a covered loss." (Def.'s Reply in Support of Its Mot. to Compel, ECF No. 21, 3, 4.) Within the subject insurance policy, the parties agreed to be bound by the result of an appraisal process intended to determine the "amount of physical loss or damage to [covered] property." (Ins. Policy at 19, ECF No. 20-2, 24.) Based on this provision, but over Charlevoix's objections, the Court ordered the parties to submit to their agreed upon appraisal process. (Order Compelling Appraisal, ECF No. 43.) When the parties failed to properly follow through with the Court's order, the Court entered additional orders and held a status conference. The Court pointedly ordered the parties' appointed

appraisers and arbitrator[1] to determine "a loss amount" in accordance with the requirements of the parties' policy. (Order Regarding Appraisal Process, ECF No. 55.) Eventually the arbitrator announced his decision, informing the Court that it determined Charlevoix was entitled to $241,894.83 for damage to its yacht and $78,098.00 for damage to its tender. (Arb. Award,[2] ECF No. 58.) Following up on the arbitrator's filing, AIG submitted a notice advising that AIG's appraiser agreed with the arbitrator's determination, attaching appraiser James McCrory's signed statement to that effect. (AIG's Notice, ECF No. 59; Ex. B, McCrory's Agmt. with Arb. Award, ECF No. 59-2.) AIG has since tendered the full amount of the award, minus a $25,000.00 deductible and a $126,263.08 payment AIG has previously provided to Charlevoix. Charlevoix has not accepted AIG's post-appraisal tender and wishes to proceed with its case.

## 2. Discussion

In its motion, Charlevoix asks the Court either (A) to reopen this case so that Charlevoix can conduct discovery in its anticipation of filing a "motion to overturn the 'Arbitration Award'" or (B), alternatively, to vacate the "Arbitration Award" outright and appoint a neutral umpire to properly appraise the damages. (Pl.'s Mot. at 1.) Charlevoix maintains Federal Rule of Civil Procedure 60(b)(6) supports its request to reopen this case but does not explain the basis for its purported entitlement to conduct discovery. At the same time, Charlevoix claims the Court has "inherent authority" to vacate the award and to select a neutral umpire to redo the appraisal. Charlevoix maintains the appraisal award should be vacated on a number of bases: (1) the arbitrator exceeded his authority as set forth in Florida Statutes section 682.13[3] (Pl.'s Mot. at 11); (2) the arbitrator was not competent to serve as an arbitrator/umpire (*id.* at 1); (3) AIG's appraiser was not "disinterested" (*id.* at 8); and (4) the award was not signed by, in addition to the arbitrator, one of the appraisers, as required by the parties agreement (*id.* at 4).

---

[1] The Court uses the term arbitrator because that is the term used by the parties' in their agreement. By using this term the Court does not mean to imply that the appointed individual here acted as an arbitrator in a formal arbitration. Instead, the Court uses the term only to describe the neutral decision-maker who was appointed by the appraisers, or the parties, in this case.

[2] The appointed arbitrator labeled his decision an "Arbitration Award." (ECF No. 58.) Again, the Court does not find the use of this label to mean that a formal arbitration, as opposed to an appraisal, was in fact conducted.

[3] Charlevoix, in its reply, without explanation, reverses course and argues that Florida Statutes section 682.13 does not in fact apply in this case. But the Court will not consider an argument raised for the first time in reply—certainly not an argument that directly contradicts the party's initial position as presented in its motion.

For its part, AIG opposes Charlevoix's motion, arguing Charlevoix has not provided support that would warrant reopening this case under Rule 60(b)(6). On the other hand, AIG does not object to Charlevoix's reliance on Florida Statutes section 682.13 in attempting to support its request to vacate the award. AIG does, however, contend that Charlevoix has not established any of the eight narrow grounds presented in that provision that would warrant the Court's vacating of the award. AIG also specifically maintains that the arbitrator was indeed competent and did not exceed his authority. Additionally, AIG counters Charlevoix's allegations that AIG's appraiser acted improperly and that the award should be vacated because it was not signed by either parties' appraiser. Finally, AIG asks the Court to confirm the award.

### A. This case is due to be reopened.

The Court is perplexed as to why Charlevoix chose to frame its request to reopen this case under Rule 60(b) when the Court, on multiple occasions, acknowledged that the conclusion of the appraisal process would not necessarily resolve the parties' dispute in its entirety. (*E.g.*, Order Granting Mot. to Compel, ECF No. 43, 5 (advising the parties, after the completion of the appraisal, to "notify this Court . . . of the status of the appraisal and whether this case is ready to resume"); Order Regarding Appraisal Process, ECF No. 55 (ordering Charlevoix to "either file a motion seeking to reopen this case or a notice that it will not be doing so" after completing the appraisal process).) Based on this allowance, there is really no "final judgment, order, or proceeding" before this Court from which Charlevoix needs to be relieved in order to reopen this case. That is, Charlevoix has not identified why it needs to be "relieved," under Rule 60(b), from the Court's order closing the case when the Court has already reserved the option to Charlevoix to file a motion to simply reopen the case should the appraisal process not resolve the entirety of the parties' dispute.

Charlevoix's complaint is still pending. While AIG has presented opposition to Charlevoix's entitlement to relief under Rule 60(b), neither party has suggested that the appraisal process has wholly settled this controversy. The Court thus grants Charlevoix's request to reopen this case. Immediately following this order the Court will enter an amended scheduling order, placing this case back on the trial calendar.

### B. The Court will not vacate the appraisal award.

At the same time, Charlevoix has not carried its burden of establishing that the award should be vacated. In its motion, Charlevoix submits that the

award in this case should be vacated by virtue of Florida Statutes section 682.13 because the arbitrator exceeded his authority. (Pl.'s Mot. at 11.) Based on the record before it, however, the Court does not find the arbitrator exceeded his authority.

Because neither party properly objects to the application of Florida's Arbitration Code to the determination of whether an appraisal award should be vacated (see note 1, above), the Court will assume, without deciding, that it applies in this case. Under the Code, among other narrowly defined reasons, a court "shall vacate an arbitration award if . . . an arbitrator exceeded the arbitrator's powers." Fla. Stat. § 682.13(d). Charlevoix bases its argument that the arbitrator here exceeded his powers on a number of factors. Primarily it contends the arbitrator failed to limit his decision to the issue of the value of damages only. In support of this claim, Charlevoix points to (1) the eight hours the arbitrator spent interviewing the captain of the yacht as to liability, and whether the incident really happened as he reported (Pl.'s Mot. at ¶¶ 9, 11, 18); (2) the arbitrator's decision to allow AIG's appraiser to interview the captain for hours as to liability and as to his and his crew's alleged negligence that resulted in the damage (*id.* at ¶ 9); (3) the 100-hour-long arbitration focused on investigating the weather, liability, and negligence (*id.* at ¶ 10); (4) the arbitrator's focus on whether there was "foul play" involved in the damage to the yacht and tender (*id.* at ¶ 13); (5) the arbitrator's conducting an arbitration instead of an appraisal (*id.* at ¶¶ 15, 18, 19); (6) the phrasing of the award itself (*id.* at ¶ 17); and (7) the arbitrator's improperly applying a preponderance-of-the-evidence legal standard (*id.* at ¶ 19). After careful review, the Court does not find that these allegations support vacating the award.

An arbitrator exceeds his powers when he "goes beyond the authority granted by the parties . . . and decides an issue not pertinent to the resolution of the issue submitted to arbitration." *Schnurmacher Holding, Inc. v. Noriega*, 542 So. 2d 1327, 1329 (Fla. 1989). Here, none of the facts Charlevoix has presented show that the arbitrator actually *decided* an issue beyond the authority that was granted to him. First, although the arbitrator may have *considered* issues that Charlevoix describes as irrelevant—such as whether the captain's portrayal of the incident was accurate, whether there was foul play involved in the grounding, or whether the captain and the crew were at fault— Charlevoix has not provided any support for his contention that any of those considerations actually resulted in a decision that went beyond the arbitrator's authority. Further, under Florida law, it does not appear the arbitrator erred in any event in evaluating various causation issues. That is, when determining the amount of loss under an appraisal clause, an umpire may properly take into account factors such as "the cost of repair or replacement and whether or

not the requirement for a repair or replacement was caused by a covered peril or a cause not covered, such as normal wear and tear, dry rot, or various other designated, excluded causes." *State Farm Fire & Cas. Co. v. Licea*, 685 So. 2d 1285, 1288 (Fla. 1996).

In a similar vein, Charlevoix argues the arbitrator exceeded his authority by conducting an arbitration rather than an appraisal. Again, there is no indication that the process the arbitrator employed to reach his decision resulted in an improper award. Further, delving into the arbitrator's process, absent an indication the arbitrator ultimately decided an issue beyond his authority, would be improper. *See First Protective Ins. Co. v. Hess*, 81 So. 3d 482, 485 (Fla. 1st DCA 2011) ("After the parties have gone through the appraisal process, the trial court may not consider evidence beyond the face of the appraisal award.") Charlevoix also contends the phrasing of the award itself shows the arbitrator exceeded the scope of his authority. The award reads, in part, "After numerous hearings and submissions by both parties' Appraisers, and considering all the credible evidence presented, the arbitrator makes the following award based on a preponderance of the credible evidence." (Pl.'s Mot. at ¶ 17 (citing the award (ECF No. 58)).) Other than citing this language, however, Charlevoix does not explain which part of the award itself exceeded the scope of the arbitrator's powers. Charlevoix also does not provide any legal support for its contention.

Finally, with respect to Charlevoix's argument that the arbitrator exceeded his authority, Charlevoix complains the arbitrator applied the wrong standard when he based his award on a preponderance-of-the-evidence legal standard. The "application of an incorrect standard, however, has consistently been rejected as a basis for vacating an award under section 682.13(1)(c)." *Felger v. Mock*, 65 So. 3d 625, 627 (Fla. 1st DCA 2011) (collecting cases from the Florida Supreme Court and various Florida District Courts of Appeal). Charlevoix has not provided any support to the contrary.

Charlevoix's remaining arguments that the award should be vacated are equally unavailing. To begin with, Charlevoix provides no support, nor can the Court find any, that the Court has "inherent authority" to vacate an appraisal award. Next, Charlevoix's contentions that the award should be vacated because the arbitrator was incompetent and because AIG's appraiser was not "disinterested" are devoid of both factual as well as legal support. Lastly, AIG's supposition that the award should be vacated because it was not signed by one of the appraisers, in addition to the arbitrator, is without merit. The parties' agreement requires only "[a] decision in writing" which is "agreed to by . . . one appraiser and the arbitrator." (Ins. Policy at 19.) Here, the arbitrator has submitted his decision in writing (ECF No. 58) and AIG's appraiser has notified

the Court of his agreement with that decision (Agmt. with Arb. Award, ECF No. 59-2 ("The undersigned Appraiser files his agreement with the Arbitration Award dated January 16, 2018, prepared by Reginal[d] M. Hayden, Jr.")). There is thus a decision in writing that both the arbitrator and one of the appraisers have agreed to.

Accordingly, the Court denies Charlevoix's motion to vacate the award. The Court also denies Charlevoix's motion to conduct discovery in order to gather evidence in support of an "anticipated motion to overturn 'Arbitration Award.'" Charlevoix has not presented any legal justification for such discovery or why it would be entitled to file a renewed motion to vacate the arbitration award.

### C. The Court does not adopt Charlevoix's proposed interpretation of the award.

In what it calls a supplement to its motion, Charlevoix argues, based on a strained interpretation of the arbitration award, that AIG should not be credited for the $126,263.08 it has already paid to Charlevoix. According to Charlevoix, "***the Arbitration Award on its face reflects no reductions in amount based on Defendant's prior payments to Plaintiff***." (Pl.'s Supp., ECF No. 64, 3 (italics and bold in original).)

The Court disagrees. Under the policy, upon a disagreement, the parties were required to select independent appraisers to "appraise the loss" amount based on "the amount of physical loss or damage to property covered" under the policy. (Ins. Pol. at 24.) If the appraisers' evaluation of the loss diverged, they were to "submit any differences to the arbitrator" for a binding decision as to the loss amount. (*Id.*) In accordance with the policy, the Court pointedly ordered the arbitrator and the appraisers to determine the "loss amount." (Order Regarding Appraisal Process at 1.) Even Charlevoix acknowledges "the appraisal panel had one task: to determine the amount of loss." (Pl.'s Reply at 2.) Similarly, Charlevoix's appraiser attests to a similar understanding: the arbitrator was tasked with determining only the value of damages. (Santos Aff. At ¶¶ 5, 8 ECF No. 72-1, 3.)

The decision agreed upon by the arbitrator and AIG's appraiser awarded a total of $320,789.66 (broken down as $241,894.83 for the yacht and $78,098.00 for the tender) to Charlevoix. (Arb. Award. at 1–2.) In order for the Court to interpret this award as already accounting for AIG's prior payment, the Court would have to find the arbitrator (1) exceeded his authority in accounting for the prior payment and (2) defied the Court's order to determine, specifically, only the loss amount. Neither party argues the arbitrator exceeded his authority or defied the Court's order in this way. Since neither party has

argued that the arbitrator exceeded his power by considering prior payments in determining the loss amount, the Court assumes AIG's prior payment was not factored into the award. The Court thus concludes the award amount represents the total amount of damage Charlevoix's vessels suffered due to the covered grounding incident and that AIG should therefore be credited for (1) any amounts it has already compensated Charlevoix towards that amount and (2) any deductible under the policy. *See also* § 14:8.Appraisal of Homeowners Insurance Claims, 17 Fla. Prac., Insurance Law § 14:8 (2017-2018 ed.) ("once the award is dispensed, the court cannot utilize external evidence to make specific calculations, other than standard items such as the deductible, prior payments, and the overall policy limits") (citing *First Protective Ins. Co. v. Hess*, 81 So. 3d 482, 485 (Fla. 1st DCA 2011).

### D. The Court grants AIG's motion to confirm the appraisal.

AIG asks the Court to confirm the award. In opposition Charlevoix continues to maintain that the arbitrator exceeded his authority and to complain that the appraisal process was not conducted appropriately.[4] Charlevoix also argues that AIG should not be permitted to deduct any prior payments it has made to Charlevoix. As discussed thoroughly above, the Court is not persuaded.

Under Florida's Arbitration Code, "In the absence of a motion legally sufficient under either section 682.13 or 682.14, the trial court must confirm the award." *Wells v. Castro*, 117 So. 3d 1233, 1237–38 (Fla. Dist. Ct. App. 2013).[5] Finding Charlevoix's motion to vacate legally insufficient, the Court thus confirms the appraisal award, consistent with the analysis above.

---

[4] Charlevoix also "incorporates by reference" into its opposition three other filings it has entered in this case: its motion to reopen or vacate the award (ECF No. 63); its supplement to that motion (ECF No. 64); and its reply in support of its motion to reopen (ECF No. 65). This is improper. *See Jones v. Tauber & Balser, P.C.*, 503 B.R. 162, 177 (N.D. Ga.), *modified*, 503 B.R. 510 (N.D. Ga. 2013) ("Neither the Court, nor the Defendants have a duty to scour Plaintiff's other filings to discern what he believe specifically supports his arguments here.") The Court will therefore only consider the arguments Charlevoix raised in its actual response to AIG's motion to confirm.

[5] While there be some debate as to the applicability of Florida's Arbitration Code to confirming an appraisal award, neither side has specifically objected to its application in confirming the appraisal here. Accordingly, for the purposes of this order, the Court will assume, without deciding, that the Code applies. *See, Pelican Pointe of Sebastian II Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 05-14142-CIV, 2007 WL 9702449, at *2 (S.D. Fla. Aug. 8, 2007) (Martinez, J.) ("Florida's appellate courts have regularly confirmed appraisal awards on the basis of the Florida Arbitration Code's confirmation process.")

### 3. Conclusion

Accordingly, the Court **grants in part and denies in part** Charlevoix's motion to reopen or vacate the appraisal award (**ECF No. 63**). The Clerk is thus directed to **reopen** this case. An amended scheduling order will follow. Further, the Court **grants** AIG's motion to confirm the award (**ECF No. 65**).

**Done and ordered**, at Miami, Florida, on August 10, 2018.

Robert N. Scola, Jr.
United States District Judge